UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

**ENVIRONMENTAL DEFENSE ALLIANCE,** and
**WATERKEEPERS FLORIDA,**

Plaintiffs,

v. Civil Action No.

**LEE M. ZELDIN**, in his official capacity as ADMINISTRATOR of the ENVIRONMENTAL PROTECTION AGENCY,

Defendant.
____________________________________/

**COMPLAINT**
**DECLARATORY RELIEF REQUESTED**
**PERMANENT INJUNCTIVE RELIEF REQUESTED**

## Nature of Action

1. This action seeks a declaration that the Administrator of the Environmental Protection Agency has failed to perform a non-discretionary duty under the Clean Water Act and unlawfully withheld agency action under the Administrative Procedure Act. This action also seeks a permanent injunction ordering the Administrator of the Environmental Protection Agency to perform his nondiscretionary duty

under the Clean Water Act and compelling him to complete agency action unlawfully withheld under the Administrative Procedure Act.

**Parties**

2. The Environmental Defense Alliance (hereinafter, "the Alliance") is a non-profit membership corporation organized under the laws of the State of Alabama in 2014 and authorized to do business in the State of Florida since 2019. The Alliance maintains it principal place of business in Jefferson County, Alabama.

3. Waterkeepers Florida is an unincorporated association of fourteen individual Waterkeeper organizations including: WWALS Watershed Coalition Florida, Inc. (dba Suwannee Riverkeeper); Tampa Bay Waterkeeper, Inc.; Suncoast Waterkeeper, Inc.; Alpha Epsilon Lambda, Inc. (dba Kissimmee Waterkeeper); St. Marys Riverkeeper, Inc.; Apalachicola Bay and River Keeper, Inc. (dba Apalachicola Riverkeeper); Collier County Waterkeeper, Inc.; Calusa Waterkeeper, Inc.; Treasure Coast Environmental Defense Fund, Inc. (dba Indian Riverkeeper); Emerald Coastkeeper, Inc.; Biscayne Bay Waterkeeper, Inc. (dba Miami Waterkeeper); Peace Myakka Waterkeeper, Inc.; St. Johns Riverkeeper,

Inc.; and Friends of Matanzas, Inc. (dba Matanzas Riverkeeper). Waterkeepers Florida was organized in 2018 and maintains its principal place of business in St. Johns County, Florida.

4. Lee M. Zeldin is the Administrator of the Environmental Protection Agency, an agency of the United States. As the Administrator, he is responsible for performing the non-discretionary duty of promulgating a water quality standard for a state not later than ninety days after the date he publishes a proposed water quality standard for the state which he has determined is necessary to meet the requirements of the Clean Water Act, unless prior to such promulgation, the state has adopted a water quality standard which the Administrator determines to be in accordance with the Clean Water Act. Clean Water Act § 303(c)(4), 33 U.S.C. § 1313(c)(4).

## Subject Matter Jurisdiction and Venue

5. This action arises under Clean Water Act, § 505(a)(2), 33 U.S.C. § 1365(a)(2), and the Administrative Procedure Act, 5 U.S.C. § 702. This court has jurisdiction over this action under 33 U.S.C. § 1365(a) and 28 U.S.C. § 1331.

6. Venue in this court is appropriate under 28 U.S.C. § 1391(e)(1).

## Statutory and Regulatory Background

7. Under Clean Water Act § 303(c), 33 U.S.C. § 1313(c), states have the primary responsibility for establishing, reviewing, and revising water quality standards applicable to their waters. Water quality standards define the desired condition of a water body, in part, by designating the use or uses to be made of the water, 40 C.F.R. §§ 131.2 and 131.10, and by setting the numeric or narrative water quality criteria necessary to protect those uses. 40 C.F.R. §§ 131.2 and 131.11.

8. There are two primary categories of water quality criteria: human health criteria and aquatic life criteria. Human health criteria protect designated uses targeted toward human health, such as public water supply, recreation, and fish and shellfish consumption. Aquatic life criteria protect designated uses targeted toward aquatic life, such as survival, growth, and reproduction of fish, invertebrates, and other aquatic species. Water quality criteria "must be based on sound scientific rationale and must contain sufficient parameters or constituents to protect the designated use of waters. For waters with multiple use designations, the criteria shall support the most sensitive use." 40 C.F.R. § 131.11(a)(1).

9. Clean Water Act § 304(a), 33 U.S.C. § 1314(a), directs the Environmental Protection Agency to periodically develop and publish recommended water quality criteria "accurately reflecting the latest scientific knowledge" on the effects of pollutants on human health and welfare and effects on aquatic life, as well as information on those pollutants, including their concentration and dispersal and how pollutants affect receiving waters. Those recommendations are available to states for use in developing their own water quality criteria. When states establish criteria, 40 C.F.R. § 131.11(b)(1) specifies that they should establish numeric criteria based on: (1) EPA's national recommended criteria, (2) modified national recommended criteria that reflect site-specific conditions, or (3) other scientifically defensible methods.

10. Clean Water Act § 303(c)(2)(B), 33 U.S.C. § 1313(c)(2)(B) (added by the Water Quality Act Amendments of 1987, Pub. L. 100-4, 101 Stat. 7), requires states to adopt numeric criteria, where available, for all toxic pollutants listed pursuant to Clean Water Act § 307(a)(1), 33 U.S.C. § 1317(a)(1), (i.e., "priority toxic pollutants" listed at 40 C.F.R. Part 423, Appendix A) for which the Environmental Protection Agency has published national recommended criteria, the discharge or presence of

which could reasonably be expected to interfere with the states' adopted designated uses.

11. Clean Water Act § 303(c)(4), 33 U.S.C. § 1313(c)(4), provides that if the Administrator determines that a new or revised water quality standard is necessary to meet the requirements of the Clean Water Act (e.g., protect the designated uses of waters), he shall promptly prepare and publish proposed regulations setting forth a revised or new water quality standard for such waters. The same subsection directs that "[t]he Administrator shall promulgate any revised or new standard under this paragraph not later than ninety days after he publishes such proposed standards, unless prior to such promulgation, such State has adopted a revised or new water quality standard which the Administrator determines to be in accordance with this chapter."

12. Clean Water Act § 402, 33 U.S.C. § 1342, establishes the National Pollutant Discharge Elimination System (NPDES). Under this provision, the Environmental Protection Agency, or a state with an approved program, shall issue permits for the discharge of pollutants from point sources into navigable waters. Such permits shall contain technology-based effluent limitations or such other effluent limitations as

are necessary to achieve compliance with applicable water quality standards (water quality-based effluent limitations), including water quality criteria.

**Allegations of Fact**

13. Pursuant to § 403.061(1), Fla. Stat., the State of Florida has adopted designated uses for waters in the State which include Class I: Potable Water Supplies; Class II: Shellfish Propagation or Harvesting; Class III: Fish Consumption, Recreation, Propagation and Maintenance of a Healthy, Well-Balanced Population of Fish and Wildlife; and Class III Limited: Fish Consumption; Recreation or Limited Recreation; and/or Propagation and Maintenance of a Limited Population of Fish and Wildlife. Fla. Admin. Code r. 62-302.400.

14. Pursuant to Clean Water Act § 304(a), 33 U.S.C. § 1314(a), the Environmental Protection Agency has published national recommended numerical water quality criteria for the protection of human health for 99 priority toxic pollutants. *See National Recommended Water Quality Criteria – Human Health Criteria Table*, at https://www.epa.gov/wqc/national-recommended-water-quality-criteria-human-health-criteria-table (last visited August 13, 2025). Among these

are numerical criteria for 85 priority toxic pollutants that were updated in June 2015. *Id.* "These updated recommendations reflect the latest scientific information and EPA policies, including updated body weight, drinking water consumption rate, fish consumption rate, bioaccumulation factors, health toxicity values, and relative source contributions." *See Human Health Ambient Water Quality Criteria: 2015 Update*, EPA 820-F-15-001 (EPA, June 2015), at https://www.epa.gov/sites/default/files/2015-10/documents/human-health-2015-update-factsheet.pdf (last visited August 13, 2025).

15. The State of Florida has adopted numerical water quality criteria for 43 priority toxic pollutants to protect human health and the designated uses of Class I, II, III, and III-Limited waters (e.g., potable water supply, shellfish harvesting, and fish consumption). *Water Quality Standards To Protect Human Health in Florida*, 88 Fed. Reg. 85530, 85534 (Dec. 8, 2023) (proposed rule). *See* Fla. Admin. Code r. 62- 302.500. The State of Florida has not adopted any new or revised numerical water quality criteria for priority toxic pollutants to protect human health and the designated uses of Class I, II, III, and III-Limited waters (e.g., potable water supply, shellfish harvesting, and fish consumption) since 1992.

16. On January 19, 2022, the Alliance and Waterkeepers Florida petitioned the Administrator of the Environmental Protection Agency to make a determination that new and revised numerical water quality criteria for toxic pollutants in Florida waters are necessary to ensure adequate protection of human health and to meet the requirements of the Clean Water Act. The Alliance and Waterkeepers Florida noted that Florida lacks any numerical water quality criteria for many toxic pollutants and lacks numerical water quality criteria for many other toxic pollutants that are sufficient to protect human health.

17. On December 1, 2022, the Assistant Administrator for the Office of Water of the Environmental Protection Agency (the Administrator's duly authorized delegatee) notified the Alliance, Waterkeepers Florida, and the State of Florida that the Agency made a determination, pursuant to Clean Water Act § 303(c)(4)(B), 33 U.S.C. § 1313(c)(4)(B), that new numerical water quality criteria for 37 priority toxic pollutants and revised numerical water quality criteria for 40 priority toxic pollutants are necessary to protect human health and the designated uses of Florida's Class I, II, III and III-Limited waters (e.g., potable water supply, shellfish harvesting, and fish consumption). In the

notification letter, the Assistant Administrator wrote, "Specifically, EPA made an Administrator's Determination that certain new and revised human health criteria (HHC) are needed to protect against adverse human health effects related to pollutants in Florida's waters, as described in the attached Determination. In particular, without an update to the 6.5 grams per day (g/day) fish consumption rate that Florida used to derive its currently applicable HHC, established in 1992, Florida is not keeping pace with the current practices of Florida residents, who appear to be eating far more fish than the 6.5 g/day input indicates." Letter from Fox to Ludder & Lomberk of Dec. 1, 2022 (Exhibit A) at 1.

18. On December 1, 2022, the Assistant Administrator for the Office of Water of the Environmental Protection Agency (the Administrator's duly authorized delegatee) transmitted to the Secretary of the Florida Department of Environmental Protection the Administrator's Determination that new and revised water quality standards in Florida are necessary to satisfy the requirements of the Clean Water Act. Letter from Fox to Hamilton of Dec. 1, 2022 (Exhibit B).

19. The Administrator's Determination states:

> Specifically, EPA has determined that new and revised human health criteria (HHC) are needed to protect against adverse human health effects related to pollutants in Florida's surface waters. As explained further below, this Determination is based on information indicating that Florida's current HHC do not protect the State's designated uses and that additional HHC are needed for certain priority toxic pollutants for which Florida currently lacks any HHC.

20. The Administrator's Determination concludes:

> Florida's existing HHC for 40 priority toxic pollutants do not reflect the latest scientific knowledge, including a FCR [Fish Consumption Rate] that is representative of the fish consumption patterns of Florida residents. In addition, Florida has no HHC for 37 priority toxic pollutants where available information indicates that those priority toxic pollutants are discharged or are present in the State's waters and could reasonably be expected to interfere with applicable designated uses.
>
> Accordingly, EPA is determining, pursuant to CWA Section 303(c)(4)(B) and 40 CFR 131.22(b), that new HHC are needed for 37 priority toxic pollutants and revised HHC are needed for 40 priority toxic pollutants to meet the requirements of the CWA for Florida (see appendix).

21. On February 27, 2023, the Deputy Secretary of the Florida Department of Environmental Protection responded to the Assistant Administrator of the Environmental Protection Agency that "the Department fully supports EPA's current plan to promulgate updated [Human Health Criteria] for Florida, which the Department can then

quickly incorporate into state law." Letter from Blalock to Fox of Feb. 27, 2023 (Exhibit C) at 1.

22. On December 8, 2023, the Administrator of the Environmental Protection Agency published proposed regulations setting forth new numerical water quality criteria for 37 priority toxic pollutants and revised numerical water quality criteria for 36 priority toxic pollutants to protect human health and the designated uses of Florida's Class I, II, III, and III-Limited waters (e.g., potable water supply, shellfish harvesting, and fish consumption). *Water Quality Standards To Protect Human Health in Florida*, 88 Fed. Reg. 85530 (Dec. 8, 2023) (proposed rule) (Exhibit D). The Administrator stated therein:

> As the EPA stated in [its] determination, one of the primary deficiencies with Florida's existing HHC is their reliance on the EPA's national default FCR from 1992. As Florida has acknowledged, its existing HHC are based on an FCR that is far lower than national, regional or state-specific studies suggest Floridians consume. This finding is consistent with the EPA's 2014 analysis of NHANES data from 2003 to 2010, which indicates that the 90th percentile consumption rate of fish and shellfish from Florida's inland and nearshore waters ranges from approximately 22 g/day to 30 g/day. * * *
>
> Regarding new HHC, the EPA determined that Florida needs new HHC for 37 additional priority toxic pollutants. Available information included in the state's rulemaking record and other state actions related to priority toxic pollutants indicates

> that more of these pollutants are likely present in state waters than originally understood in 1992. * * * These additional HHC are necessary in order to ensure that the state's designated uses are protected.

Id. at 85535 (footnotes omitted). Accordingly, "EPA proposes to derive new and revised HHC for Florida using the national default FCR of 22 g/day . . .." Id. at 85536.

23. In October 2023, the Environmental Protection Agency published an *Economic Analysis for Water Quality Standards to Protect Human Health in Florida*. The Analysis states, in part:

> The United States Environmental Protection Agency (EPA) has determined that many of Florida's human health criteria (HHC) are not protective of Florida's designated uses and are not based on sound science. Accordingly, EPA is proposing to promulgate protective HHC for Florida's waters. This report provides estimates of the potential incremental compliance actions and costs that may be associated with the regulation. * * *
>
> HHC protect designated uses such as public water supply, recreation, and fish and shellfish consumption. HHC are designed to reduce the risk of adverse cancer and non-cancer health effects occurring from lifetime exposure to pollutants through the ingestion of drinking water and consumption of fish/shellfish. Florida last adopted HHC for priority toxic pollutants in 1992, utilizing EPA-recommended procedures and science available at that time, including a national default fish consumption rate (FCR) of 6.5 g/day. EPA's national default FCR for the general U.S. adult population 21 years of age and older is now 22 g/day. Through its previous efforts to

> revise the HHC in its water quality standards (WQS), Florida determined that new HHC for additional priority toxic pollutants were also warranted. Because Florida's efforts to revise HHC have stalled, in December 2022 EPA issued an Administrator's Determination that Florida's existing HHC are not protective of Florida's designated uses and that additional HHC are needed for certain priority toxic pollutants for which Florida currently lacks any HHC.
>
> Although the rule does not establish any requirements directly applicable to entities regulated under the National Pollutant Discharge Elimination System (NPDES) program or to other sources of pollution, state implementation may result in new or revised NPDES permit conditions for point source dischargers and additional controls on nonpoint sources of pollutant loadings. This analysis provides information on the potential for incremental costs to be associated with such incremental controls.

*Id.* at viii.

24. The Analysis further states that "EPA identified 376 point source facilities that could be affected by this proposed rulemaking." *Id.* The Environmental Protection Agency analyzed a sample of 19 facilities that discharge priority toxic pollutants and concluded that 12 of those would likely require more stringent water quality-based effluent limitations on priority toxic pollutants, specifically Aldrin, Chlorodibromethane, 2,4,6-Trichlororphenol, Bis(2-ethylhexyl) phthalate, and Pentachlorohenol, in their NPDES permits if the proposed new and

revised numerical water quality criteria for priority toxic pollutants are promulgated by the Administrator.

25. Plaintiffs have identified 76 facilities that discharge Mercury into Florida's Class II, III, and III-Limited waters that are currently identified as being impaired, i.e, not meeting the designated use of shellfish harvesting and fish consumption due to the presence of high levels of Mercury in fish tissues and the issuance of fish consumption advisories by the Florida Department of Health. The discharge of Mercury into Class II, III, and III-Limited waters contributes to the presence of Methlymercury in fish tissues. The proposed regulations published by the Administrator of the Environmental Protection Agency on December 8, 2023, if promulgated, would establish a new numerical water quality criterion for Methylmercury in fish tissue.

26. After consideration of public comments on the proposed rule, on September 24, 2024, the Environmental Protection Agency submitted to the Office of Management and Budget for review pursuant to Executive Order No. 12866, 29 Weekly Comp. of Pres. Docs. 1925 (Sept. 30, 1993), 58 Fed. Reg. 51733 (Oct. 4, 1993), a draft final rule setting forth new and revised numerical water quality criteria for priority toxic pollutants to

protect human health and the designated uses of Florida's Class I, II, III and III-Limited waters (e.g., potable water supply, shellfish harvesting, and fish consumption).

27. On January 16, 2025, the Committee on Environment and Public Works of the United States Senate conducted a hearing on the prospective nomination by President-elect Donald J. Trump of Lee M. Zeldin to be Administrator of the Environmental Protection Agency. Lee M. Zeldin testified that "it is important that the EPA is honoring our obligations under the law, fulfilling the historic landmark laws that are on the books, like . . . the Clean Water Act . . .." *Hearing on the Nomination of the Honorable Lee M. Zeldin to be Administrator of the Environmental Protection Agency*, S. Comm. on Env't and Pub. Works, 119th Cong. 26 (Jan. 16, 2025), https://www.epw.senate.gov/public/?a=Files.Serve&File_id=C4282A20-59A6-4523-BCD3-F692FFD133C9 (last visited August 14, 2025).

28. On January 20, 2025, President-elect Donald J. Trump was inaugurated and sworn in as President of the United States.

29. On January 20, 2025, President Donald J. Trump nominated Lee M. Zeldin to be the Administrator of the Environmental Protection

Agency. *Order on Cabinet and Cabinet-Level Nominations Submitted to the Senate*, Daily Comp. Pres. Docs., 2025 DCPD No. 202500106 (Jan. 20, 2025).

30. On January 20, 2025, President Donald J. Trump designated James Payne as acting Administrator of the Environmental Protection Agency. *Order on Acting Cabinet and Cabinet-Level Appointments*, Daily Comp. Pres. Docs., 2025 DCPD No. 202500108 (Jan. 20, 2025).

31. On January 20, 2025, President Donald J. Trump designated Matthew Vaeth as acting Director of the Office of Management and Budget. *Order on Acting Cabinet and Cabinet-Level Appointments*, Daily Comp. Pres. Docs., 2025 DCPD No. 202500108 (Jan. 20, 2025).

32. On January 20, 2025, President Donald J. Trump issued an order to all executive departments and agencies, including the Environmental Protection Agency, directing them as follows:

> (1) Do not propose or issue any rule in any manner, including by sending a rule to the Office of the Federal Register (the "OFR"), until a department or agency head appointed or designated by the President after noon on January 20, 2025, reviews and approves the rule. The department or agency head may delegate this power of review and approval to any other person so appointed or designated by the President, consistent with applicable law. The Director or Acting Director of the Office of Management and Budget (the "OMB

> Director") may exempt any rule that he deems necessary to address emergency situations or other urgent circumstances, including rules subject to statutory or judicial deadlines that require prompt action.

*Memorandum on Regulatory Freeze Pending Review* at ¶ 1, Daily Comp. Pres. Docs., 2025 DCPD No. 202500142 (Jan. 20, 2025), 90 Fed. Reg. 8249 (Jan. 28, 2025).

33. On January 21, 2025, James Payne, acting Administrator of the Environmental Protection Agency (or his authorized delegatee) withdrew from review by the Office of Management and Budget the draft final rule setting forth new and revised numerical water quality criteria for priority toxic pollutants to protect human health and the designated uses Florida's Class I, II, III and III-Limited waters (e.g., potable water supply, shellfish harvesting, and fish consumption).

34. On January 29, 2025, the United States Senate confirmed President Donald J. Trump's nomination of Lee M. Zeldin as Administrator of the Environmental Protection Agency. 171 Cong. Rec. S460-461 (daily ed. Jan. 29, 2025).

35. On February 6, 2025, the United States Senate confirmed President Donald J. Trump's nomination of Russell T. Vought as Director

of the Office of Management and Budget. 171 Cong. Rec. S779-781 (daily ed. Feb. 6. 2025).

36. On February 7, 2025, the Alliance and Waterkeepers Florida served on Lee M. Zeldin, Administrator of the Environmental Protection Agency, by certified mail, a notice of intent to sue the Administrator for failure to perform his nondiscretionary duty under Clean Water Act § 303(c)(4), 33 U.S.C. § 1313(c)(4), to promulgate new and revised numerical water quality criteria for priority toxic pollutants to protect human health and the designated uses of Florida's Class I, II, III and III-Limited waters (e.g., potable water supply, shellfish harvesting, and fish consumption) not later than 90 days after publication of proposed new and revised numerical water quality criteria for 73 priority toxic pollutants to protect human health and the designated uses of Florida's Class I, II, III and III-Limited waters (e.g., potable water supply, shellfish harvesting, and fish consumption). On February 7, 2025, the Alliance and Waterkeepers Florida also mailed a copy of such notice to the Attorney General of the United States.

37. Subsequent to December 8, 2023, neither the Administrator of the Environmental Protection Agency nor the State of Florida has

promulgated any new or revised numerical water quality criteria for priority toxic pollutants to protect human health and the designated uses of Florida's Class I, II, III and III-Limited waters (e.g., potable water supply, shellfish harvesting, and fish consumption).

38. The absence of new and revised numerical water quality criteria for priority toxic pollutants in Florida's Class II, III and III-Limited waters presents a present and continuing threat of injury to the health of recreational and subsistence fishers, their families, and other persons who consume fish and shellfish from those waters. With regard to this present and continuing threat, the Environmental Protection Agency stated:

> The EPA believes that the human health or environmental conditions that exist prior to this action result in or have the potential to result in disproportionate and adverse human health or environmental effects on communities with environmental justice concerns. Florida's current FCR of 6.5 g/day is far lower than national, regional or state-specific studies suggest Floridians consume. In addition, Florida does not have HHC for certain priority toxic pollutants that are likely to be present in Florida's waters. As a result, Florida's HHC are not protective of Florida's designated uses. Many groups in Florida, such as subsistence and recreational Tribal and non-Tribal fishers, consume self-caught fish and shellfish. Florida's current HHC expose these higher fish consumers to greater risk from toxic pollutants. Florida's low FCR and lack of HHC for additional priority toxic pollutants potentially

> present in the state's waters disproportionately affect these groups.
>
> The EPA believes that this action is likely to reduce existing disproportionate and adverse effects on communities with environmental justice concerns. Specifically, this rule would establish HHC based on a FCR of 142 g/day in areas where Tribes have reserved rights to fish for subsistence, which would help protect higher fish consumers, and it would increase the statewide FCR to 22 g/day in areas where Tribes do not have reserved rights to fish for subsistence, which would help protect the general population of fish consumers in the state. Additionally, it would establish new HHC for priority toxic pollutants for which there are currently no HHC. This will ensure that Florida's HHC protect all users of Florida's waters, including Tribes who engage in subsistence fishing where they have a reserved right to do so.

*Water Quality Standards to Protect Human Health in Florida*, 88 Fed. Reg. 85530, 85547-48 (Dec. 8, 2023) (proposed rule) (Exhibit D). *See also* Letter from Fox to Hamilton of Dec. 1, 2022 (Exhibit B) ("EPA has determined that new and revised human health criteria (HHC) are needed to protect against adverse human health effects related to pollutants in Florida's surface waters."); *Final Updated Ambient Water Quality Criteria for the Protection of Human Health – Notice of Availability*, 80 Fed. Reg. 36986, 36987 (June 29, 2015) ("EPA announces the availability of final updated national recommended water quality criteria for the protection of human health for ninety-four chemical pollutants.").

39. The mission of Waterkeepers Florida is to protect and restore Florida's waters including water quality and quantity, the flora and fauna that depend on our water, and the aesthetic, recreational, and economic values of clean water through education, advocacy, and community engagement.

40. Waterkeepers Florida maintains four core programs: Capacity (Build the resources and capacity for Waterkeepers Florida's work); Policy (Influence policy to better protect and restore Florida's waters); Communications (Increase Waterkeepers Florida's ability to communicate with collective voice); and Enforcement (Strengthen enforcement efforts to hold polluters and agencies accountable).

41. Waterkeepers Florida is presently funded by a grant that is intended "to cover a portion of the costs associated with hosting and attending in-person workshops and conferences and expanding statewide programming" in furtherance of its Capacity program.

42. In direct response to the Environmental Protection Agency's January 21, 2025 withdrawal of the draft final rule to establish new and revised numerical water quality criteria for priority toxic pollutants from Office of Management and Budget review, and the Administrator's

continued failure to promulgate a final rule establishing new and revised numerical water quality criteria for 73 priority toxic pollutants considered to be necessary to protect human health and the designated uses of Florida's Class II, III and III-Limited waters (e.g., shellfish harvesting and fish consumption), Waterkeepers Florida established a Priority Toxics Training Program on April 15, 2025.

43. The Priority Toxics Training Program was established by Waterkeepers Florida in an effort to mitigate the harm to the thousands of recreational and subsistence fishers, their families, and other persons, who consume fish and shellfish taken from Florida's Class II, III and III-Limited waters that receive discharges of priority toxic pollutants for which the Administrator has not promulgated new and revised numerical water quality criteria to protect human health and the designated uses of Florida's Class II, III and III-Limited (e.g., shellfish harvesting and fish consumption).

44. Under Waterkeepers Florida's Priority Toxics Training Program, individual Waterkeeper organizations have been, and will continue to be, trained to identify facilities that discharge priority toxic pollutants into Florida waters designated as Class II, III and III-Limited

waters and to develop comments on proposed new, renewed, and modified NPDES permits prepared by the Florida Department of Environmental Protection for such facilities that urge the imposition of facility-specific water quality-based effluent limitations necessary to ensure compliance with Florida's narrative minimum water quality criteria in Fla. Admin. Code r. 62-302.500(1)(a) (all waters shall be free from any components of discharges in concentrations that are carcinogenic, mutagenic, and teratogenic to human beings or pose a serious danger to public health, safety, or welfare) based on the science included and referenced in available recommended water quality criteria documents published by the Environmental Protection Agency.

45. Waterkeepers Florida has no dedicated funding to implement the Priority Toxics Training Program. As a result, Waterkeepers Florida has diverted, and will continue to divert, funds intended to be used for its Capacity program to cover expenses incurred to implement the Priority Toxics Training Program. The funds that have been, and will continue to be, diverted to the Priority Toxics Training Program, will diminish the capacity of Waterkeepers Florida to implement its Capacity program.

46. But for the failure of the Administrator to promulgate new and revised numerical water quality criteria for priority toxic pollutants to protect human health and the designated uses of Florida's Class II, III and III-Limited waters (e.g., shellfish harvesting and fish consumption), Waterkeepers Florida would not have established its Priority Toxics Training Program and would not have diverted funds intended to be used for its Capacity program to the Priority Toxics Training Program.

47. If the Administrator promulgates new and revised numerical water quality criteria for priority toxic pollutants to protect human health and the designated uses of Florida's Class II, III and III-Limited waters (e.g., shellfish harvesting and fish consumption), Waterkeepers Florida will terminate its Priority Toxics Training Program and cease to divert funds for its Capacity program to the Priority Toxics Training Program.

48. The purpose of the Alliance is to further the conservation, preservation, protection, maintenance, improvement, and enhancement of human health and the environment on behalf of its members and the public. Its mission is to strategically use law and policy to protect human health and the environment.

49. The Alliance maintains four core programs: Toxics Reduction, Environmental Justice, Government Accountability, and Compliance-Enforcement. Under its Toxics Reduction Program, the Alliance states that "[w]here measured or allowable toxic pollutant concentrations exceed levels necessary to protect human health or other creatures, the Alliance will seek to identify the sources and take action to reduce the measured or allowable toxic pollutants. These actions might include enforcement actions if a source is out of compliance or petitions for rulemaking to reduce the allowable discharge or emission of toxic pollutants."

50. The Alliance is funded entirely from donations. Its limited funds are used primarily to pay minimal administrative and marketing expenses and to reimburse personnel and volunteer contractors for out-of-pocket expenses incurred on behalf of the Alliance. Although the Alliance maintains a Toxics Reduction program, it has no dedicated funding for the Program.

51. In direct response to the Environmental Protection Agency's January 21, 2025 withdrawal of the draft final new and revised numerical water quality criteria for priority toxic pollutants to protect human health and the designated uses of Florida's Class II, III and III-Limited waters

(e.g., shellfish harvesting and fish consumption) from Office of Management and Budget review and the Administrator's continued failure to promulgate such new and revised numerical water quality criteria, the Alliance diverted a portion of its general operating funds to Waterkeepers Florida to support its Priority Toxics Training Program. This funding is provided to enhance Waterkeepers Florida's effort to mitigate the harm to the thousands of recreational and subsistence fishers, their families, and other persons, who consume fish and shellfish taken from Florida's Class II, III and III-Limited waters that receive discharges of priority toxic pollutants for which the Administrator has not promulgated new and revised water quality criteria to protect human health and the designated uses of Florida's Class II, III and III-Limited (e.g., shellfish harvesting and fish consumption).

52. The Alliance further resolved to continue providing funds to Waterkeepers Florida on a quarterly basis to support its Priority Toxics Training Program until the Administrator promulgates new or revised numerical water quality criteria for priority toxic pollutants in Florida's Class II, III and III-Limited waters.

53. The diversion of general operating funds to support the Waterkeepers Florida Priority Toxics Training Program will impair the Alliance's ability to undertake activities under its core programs, i.e., Toxics Reduction, Environmental Justice, Government Accountability, and Compliance-Enforcement.

54. But for the failure of the Administrator to promulgate new and revised numerical water quality criteria for priority toxic pollutants in Florida's Class II, III and III-Limited waters, the Alliance would not have diverted a portion of its limited general operating funds to Waterkeepers Florida to support its Priority Toxics Training Program.

55. If the Administrator promulgates new and revised numerical water quality criteria for priority toxic pollutants to protect human health and the designated uses of Florida's Class II, III and III-Limited waters (e.g., shellfish harvesting and fish consumption), the Alliance will terminate its funding of the Waterkeepers Florida's Priority Toxics Training Program.

**Count I**

56. Paragraphs 1 through 55 hereof are incorporated herein by reference.

57. Clean Water Act § 505(a), 33 U.S.C. § 1365(a), authorizes any person (including a corporation or association) having an interest which is or may be adversely affected to commence a civil action against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator. The same section authorizes the district courts "to order the Administrator to perform" any act or duty under the Clean Water Act which is not discretionary with the Administrator.

58. Clean Water Act § 303(c)(4), 33 U.S.C. § 1313(c)(4), provides:

> The Administrator shall promptly prepare and publish proposed regulations setting forth a revised or new water quality standard for the navigable waters involved—
>
> * * *
>
> (B) in any case where the Administrator determines that a revised or new standard is necessary to meet the requirements of this chapter.
>
> The Administrator shall promulgate any revised or new standard under this paragraph not later than ninety days after he publishes such proposed standards, unless prior to such promulgation, such State has adopted a revised or new water quality standard which the Administrator determines to be in accordance with this chapter.

59. Clean Water Act § 303(c)(4), 33 U.S.C. § 1313(c)(4), establishes a nondiscretionary duty on the part of the Administrator to promulgate new and revised water quality standards not later than 90 days after publishing proposed new and revised water quality standards.

60. More than ninety days have elapsed since the Administrator published proposed regulations setting forth new and revised water quality criteria for priority toxic pollutants in *See Water Quality Standards to Protect Human Health in Florida – Proposed Rule*, 88 Fed. Reg. 85530 (Dec. 8, 2023).

61. The Administrator has failed, and continues to fail, to perform his nondiscretionary (i.e., Congressionally mandated) duty to promulgate new and revised water quality criteria for priority toxic pollutants in Florida's Class I, II, III and III-Limited waters as required by Clean Water Act § 303(c)(4), 33 U.S.C. § 1313(c)(4).

**Count II**

62. Paragraphs 1 through 55 hereof are incorporated herein by reference.

63. The Administrative Procedure Act, 5 U.S.C. § 702 provides that any person (including a corporation or association) adversely affected or

aggrieved by agency action (including failure to act) within the meaning of a relevant statute, is entitled to judicial review thereof. The Act authorizes the Court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

64. Clean Water Act § 303(c)(4), 33 U.S.C. § 1313(c)(4), provides:

> The Administrator shall promptly prepare and publish proposed regulations setting forth a revised or new water quality standard for the navigable waters involved—
>
> * * *
>
> (B) in any case where the Administrator determines that a revised or new standard is necessary to meet the requirements of this chapter.
>
> The Administrator shall promulgate any revised or new standard under this paragraph not later than ninety days after he publishes such proposed standards, unless prior to such promulgation, such State has adopted a revised or new water quality standard which the Administrator determines to be in accordance with this chapter.

65. Clean Water Act § 303(c)(4), 33 U.S.C. § 1313(c)(4), establishes a nondiscretionary duty on the part of the Administrator to promulgate new and revised water quality standards not later than 90 days after publishing proposed new or revised water quality standards.

66. More than ninety days have elapsed since the Administrator published proposed regulations setting forth new and revised numerical water quality criteria for priority toxic pollutants in Florida's Class I, II, III and III-Limited waters. *See Water Quality Standards to Protect Human Health in Florida – Proposed Rule*, 88 Fed. Reg. 85530 (Dec. 8, 2023).

67. The Administrator of the Environmental Protection Agency has unlawfully withheld, and continues to unlawfully withhold, the promulgation of new and revised numerical water quality criteria for priority toxic pollutants in Florida's Class I, II, III and III-Limited waters as required by Clean Water Act § 303(c)(4), 33 U.S.C. § 1313(c)(4).

**Demand for Relief**

Plaintiffs demand the following relief:

A. That the Court enter a declaratory judgment holding that the Administrator of the Environmental Protection Agency has failed to perform a nondiscretionary duty under Clean Water Act, to wit: to promulgate new and revised numerical water quality criteria for 73 priority toxic pollutants in Florida's Class II, III and III-Limited waters not later than 90 days after the publication of proposed new or revised

water criteria for such pollutants in *Water Quality Standards to Protect Human Health in Florida – Proposed Rule*, 88 Fed. Reg. 85530 (Dec. 8, 2023) as required by Clean Water Act § 303(c)(4), 33 U.S.C. § 1313(c)(4);

B. That the Court enter a declaratory judgment holding that the Administrator of the Environmental Protection Agency has unlawfully withheld agency action under the Administrative Procedure Act, to wit: the promulgation of new and revised numerical water quality criteria for 73 priority toxic pollutants in Florida's Class II, III and III-Limited waters not later than 90 days after the publication of proposed new or revised water criteria for such pollutants in *Water Quality Standards to Protect Human Health in Florida – Proposed Rule*, 88 Fed. Reg. 85530 (Dec. 8, 2023) as required by Clean Water Act § 303(c)(4), 33 U.S.C. § 1313(c)(4);

C. That the Court issue a permanent injunction ordering the Administrator of the Environmental Protection Agency to immediately promulgate regulations establishing new and revised numerical water quality criteria for 73 priority toxic pollutants in Florida's Class II, III and III-Limited waters;

D. That the Court award Plaintiffs costs of litigation (including reasonable attorney and expert witness fees) pursuant to Clean Water Act

§ 505(d), 33 U.S.C. § 1365(d), or the Equal Access to Justice Act, 28 U.S.C. § 1242; and

E. That the Court award Plaintiffs any other relief to which they are entitled.

/s/ David A. Ludder
David A. Ludder
*Attorney for Plaintiffs*
LAW OFFICE OF DAVID A. LUDDER, PLLC
9150 McDougal Ct.
Tallahassee, FL 32312-4208
Email davidaludder@enviro-lawyer.com
Phone (850) 386-5671